Very good. Congratulations. Thank you. All right, we can begin with our first case, McPherson v. USAetal. Good morning. My name is Jennings Durand. I'm an associate with Deckert, and we have been appointed as amicus to argue in support of the appellant, Winston McPherson. I've been requested, and it is my great pleasure to introduce Ryan Ulloa. Mr. Ulloa recently graduated from the law school at the University of Pennsylvania. My colleague Carolyn Feeney and I have worked closely with Ryan on this appeal and supervised his work. Mr. Ulloa has been admitted pursuant to local appellate rule 46.3, and he's going to argue the case today. Thank you. Thank you. Welcome, Mr. Ulloa. Good morning. Good morning, Your Honor. You are taking time for a rebuttal? Yes, sir. I'd like to reserve two minutes for rebuttal. Two minutes. Very well. Your Honor, this case is about ensuring that law enforcement officials respect the rights of a foreign national to consular notification, rights that are given to them under the Vienna Convention and enforceable through Section 1983. There are two issues I'd like to address with the Court today.  First, that the plain language of the Vienna Convention creates an individual right to consular notification and that it's presumptively enforceable under Section 1983. And second, that the District Court improperly dismissed Mr. McPherson's complaint, sua sponte, on statute of limitations grounds. I'd like to begin with the plain language. The Supreme Court in Gonzaga v. Doe gave the Court an analytical framework for deciding whether federal law provides for an individual right. The Gonzaga Court tells us there are two inquiries to make. First, whether the intent was to create a right. And second, whether there was an intent to create a remedy. You know what's interesting about the plain language is that you have three circuit courts of appeals that look at this issue and look at it one way. And even judges in those courts of appeals disagree as to what the Vienna Convention is explicitly saying. And then you have the Seventh Circuit, which is against the other three circuits. So when you say plain language, is this really plain language or are we talking about an ambiguous phrase in the Convention? No, Your Honor. I believe the phrase is unambiguous. I think that with the Second, the Ninth, and the Eleventh Circuit, their analysis falls off is that they confuse the Gonzaga test. The Gonzaga test tells us we have two inquiries. One, is there a right? And two, is there a remedy? However, the second inquiry is presumptively provided by Section 1983. Those courts all look for the provision of an express remedy in the Vienna Convention instead of, as the Yogi Court in Judge Wood's opinion, looks just for the right. Mr. O'Yara, do all of the circuits, the Seventh, the Ninth, the Second, and the Eleventh, conclude that there is a right? No, the Seventh Circuit concludes there's a right, whereas the other three do not. Okay. So they're looking at the same phrase in the Vienna Conventions. Article 36, I believe it is? Article 36, 1B. And one court says there is a right and the other ones say there is not a right? Correct, Your Honor. And why is that? Because they misapply the Gonzaga test. The Second, the Ninth, and the Eleventh look to the terms of the treaty and they look for the provision of a judicial remedy in the treaty itself, whereas the remedy is provided by Section 1983, which is separate and apart from the treaty. Does the right depend on whether there is a remedy? According to the Gonzaga Court, no, because 1983 provides a presumptive remedy. So the only inquiry to make is whether or not there's a right based on the language of the statute. And that's why the Seventh Circuit was able to find the right, whereas the Second, Ninth, and Eleventh were not, because they were looking for the remedy as opposed to looking just for the right. That's the key misunderstanding both in the U.S. Attorney's Brief and in those opinions in the Second, Ninth, and Eleventh. And if we look to the text of the Vienna Convention, particularly Article 36, 1B, it reads, if he so requests, authorities shall, without delay, inform the consular post if a national is arrested or detained. Any communication by the person shall be forwarded without delay. And lastly, the said authority shall inform the person concerned without delay of his rights under this subparagraph. So in your view, the word shall inform the alien or the national, shall inform means that there is explicitly a right. Correct, Your Honor. Now, we can look at that separate from whether there's a vehicle to enforce the right. Yes, the vehicle is presumptive under 1983, so we're looking strictly as to whether there's a right. And we submit that the language does create a right by saying, if he so requests, it mentions his rights, speaking of the foreign national, and that there's two important distinctions here. First, that it speaks in terms of the foreign national himself. But second, it vests the discretion of whether or not to contact the foreign consulate in the sole discretion of that foreign national. It could have read that they have to automatically contact the consulate, but it doesn't. It provides a right of notification that you have these two further rights and then allows the foreign national to decide whether to exercise the further rights. But the original right to notification is a right that's provided for by Article 36B in the plain language. The Gonzaga Court further tells us. Tell me, how do you envision that this is going to take place? In other words, this defendant was arrested in New Jersey. He was picked up for homicide in Pennsylvania. He was tried. He was convicted. He was sentenced. And you're saying that at some point in time, he should have been told that he had a right to consult with consular officials of his country, Jamaica. Yes, sir. How does that happen? Does the arresting officer say, we think you're a Jamaican, therefore we want to advise you of your rights? Does it happen in a cell? When does it occur, practically speaking? From the language of the Vienna Convention, it seems that it occurs as soon as the arrest or the detainment is made, that the arresting officer shall inform the foreign national of his right to consult. Do you expect the arresting officers on the beat at 2 o'clock in the morning to know that they're arresting somebody from Jamaica or Russia or Germany? I imagine that is part of normal booking procedures. It could also happen. But the important part is in this case it never happened, not in the arrest, not in the subsequent interrogations, not at trial. Did he say to the police at any time, I'm Jamaican, I happen to be from Jamaica, or was there something about him that let the police officers know that he is a foreign national? Other than perhaps the language barrier, but that would be sort of an assumption to make by the arresting officials. But the Vienna Convention does not require Mr. McPherson to make the request or to inform them that he's a foreign national. It requires the arresting officials to inform him that he has the right and invest that decision in his discretion as to whether or not he chooses to exercise that right. Now, the claim here also concerns arrests that occurred with charges being dismissed on matters that occurred in New Jersey. Is that correct? Is the plaintiff, is Mr. McPherson seeking relief here with respect to the New Jersey arrests that occurred in the late 80s? The complaint does allege a couple of incidents, both the arrests he was ultimately convicted on and the previous confrontations or interactions with law enforcement. Taking the complaint allegations, that would seem that he's making multiple claims. If it was clear that Mr. McPherson knew of his Vienna Convention rights and knew for some time prior to filing this Section 1983 action, would you agree that it would be appropriate to dismiss the matter on statute of limitations grounds? The right specifically states that he has to be notified. So whether or not Mr. McPherson knows of the right? Well, I'm talking about the statute of limitations issue now. I'm hoping maybe we could get into the statute of limitations question. And first, let me say what an excellent job you all did on that brief that was submitted on behalf of Mr. McPherson. It was extremely persuasive. But I do have a concern about the statute of limitations question. Because as I understood it, one of the arguments you're making is that there should be equitable tolling because he was not affirmatively advised of his Vienna Convention rights. And it seemed implicit in that statement was that he didn't know of his Vienna Convention rights until at least within two years of filing the Section 1983 action. Now, if the facts showed otherwise, if the facts showed that, in fact, he knew of his Vienna Convention rights at least as far back as the late 1990s, would you not agree that this action would be subject to dismissal on statute of limitations grounds? If the only issue in contention was equitable tolling. But I would like to point the Court's attention to Ray B. Curtis, a Third Circuit case, that says that sui sponte dismissal of an affirmative defense is improper under the PLRA. But hasn't the Supreme Court said in Jones, which also dealt with that issue, and hasn't our Court as well said that the statute of limitations issue can be raised on a Rule 12b-6 motion when it is apparent from the face of the complaint that the action is subject to being dismissed on time bar grounds? I'm sorry, did you say after a 12b-6 motion is filed? On the basis of a 12b-6 motion. And that's the key distinction, Your Honor. There has been no response of pleading in this case. And since it's an affirmative defense, that response. But isn't initial screening of a complaint under the Section 1915 and the various provisions that call for initial screening, doesn't that call upon the district court to apply a 12b-6 standard for purposes of dismissing an action? No, Your Honor. The PLRA does not alter the general notice pleading standards of the Federal rules. It requires, if Mr. McPherson had failed to make one of the elements of a successful 1983 claim, then they could have sued, sponsored, dismissed. But the statute of limitations remains an affirmative defense that must be pled by the defendant. And, in fact, the Jones v. Baugh case says just that. It says that the burden, although it's a grounds for dismissal, the burden remains the defendant to make the response of pleading. Part of your argument was that without notice to the plaintiff of a potential dismissal, the Court is unable to determine whether there's any equitable tolling at all. Well, there are two arguments. First, that the dismissal is improper, per se. It's an improper move for the Court. But second, that it wouldn't be improper as from the face of the pleadings. It is very clear that the statute of limitations has run. Well, that's where the equitable toll income is. We feel it perhaps isn't clear. But regardless of whether or not it's clear, the affirmative defense has to be raised by the defendant before the Court can consider on the face of the complaint. So it's your – well, are you aware of the fact that Mr. McPherson filed a PCRA proceeding and then followed by a federal habeas corpus proceeding in the Eastern District of Pennsylvania, in each of which he raised the Vienna Convention issue? I'm not, Your Honor. Mr. McPherson is not our client, so we only have one. Right. But if our Westlaw search indicated that, and we have the briefs that were filed in the PCRA proceeding right up through the Pennsylvania Supreme Court, and we have the habeas corpus ruling of the district judge which raised the Vienna Convention issue, albeit in a different context, would that not indicate that he had notice of the right such that it's evident from the face of the complaint, coupled with judicial notice of the official court records, that this action is time-barred? That may or may not be the case. It's certainly possible. But what's important is that Jones v. Bach both explicitly noted that Ray v. Curtis is in the same position as the Supreme Court and that it has to be pled by the defendant in an affirmative defense. Because there's no such response of pleading here, it was improper for the court to even consider these things. Furthermore, we feel like perhaps the facts are not as clear as they seem because of these doctrines that haven't been applied that perhaps might be more appropriately applied in a district court where Mr. McPherson can plead such. But more importantly is that it's an affirmative defense that must be raised by the defendant. Who was the defendant in the New Jersey case? In the New Jersey? From the failure to inform Mr. McPherson of his Vienna Convention rights in New Jersey. Who would be the proper defendants in that case? A matter that occurred now more than 20 years ago. There were several defendants as a result of the 1995 arrest. And some of them were removed for immunity grounds, but the remaining defendants are the prosecutors and the detectives who interrogated Mr. McPherson both in New Jersey and in Pennsylvania. I bring you back to the Vienna Convention's issue. The preamble to the convention states that the convention's privileges and immunities are not meant to benefit individuals, but rather to ensure the efficient performance of functions by consuls. Doesn't that undercut your argument that there is an individual specific right that McPherson has to file a claim? No, Your Honor, because both the – first, the Whitman v. American trucking case out of the Supreme Court instructs us that if the language is clear, we should not resort to the preamble to make an ambiguity where none existed because it loses interpretive role. The preamble is only an interpretive device, but the text of the statute of the treaty here should control. And furthermore, that phrase in the preamble could be read as a distinction between the official – the individual rights of a diplomat versus – in their individual capacity versus their official capacity is just as reasonable a reading of that sentence. Gonzaga is a Supreme Court case. Yes, Your Honor. What is the language in that case that says that McPherson has in 1983 the right to file a claim under the Vienna Conventions? There's no such language, Your Honor. What it does tell us is that if federal law creates a right, 1983 will be the presumptive remedy, and it gives us several indicators and indicia to determine whether there's a right. And the law is the statement in the Vienna Conventions? The Vienna Convention pursuant to the Supremacy Clause of the Constitution becomes a federal law on equal footing with any other federal statute. And that's where the Gonzaga framework applies. The Second, Ninth, and Eleventh do not dispute the application, but they misapply it. Mr. O'Neill, thank you very much. Thank you, Your Honor. Ms. Swingle? May it please the Court, Sharon Swingle from the Department of Justice representing the United States this morning. I'd like to begin briefly, if I may, with Judge Vanosky's question. We do believe, Your Honor, that the Court can take judicial notice of Mr. McPherson's pleadings in the earlier post-conviction proceedings, which are obviously a clear indication that he did have actual notice at least by 1999 of his rights under the Vienna Convention. And I think Jones v. Bach and both this Court's pre-Jones and post-Jones case law are that a claim is time-barred, that it's just a red herring to talk about who has the burden of pleading an affirmative defense. Nevertheless, that affirmative defense can be the basis for dismissal at the outset. But then to turn to the Vienna Convention. It's also clear, is it not, that many district courts, many district judges at least in the Third Circuit, have considered the question and have determined that they have the authority to dismiss a prisoner action that calls for a preliminary screening under the various provisions of Section 1915 and 1950A on statute of limitations grounds, where it's clear. I believe that's right, Your Honor, and I think that's fully consistent with the broader universe of 12B case law. But to turn to the Vienna Convention issue, which obviously is the principal reason that the government is here this morning, and just to be clear, I am here from Maine Justice, not the U.S. Attorney's Office, and obviously representing the views both of the Department of Justice and the Department of State, which ultimately is charged with the enforcement of and negotiation of international treaties. The question before the Court is whether Article 36 of the Vienna Convention creates individually enforceable rights under Article 36. And just to be clear, Judge Fuentes, not only the three courts of appeals that have decided this question in the context of claims for money damages, but in addition, the Fifth and Sixth Circuits have decided in the context of claims challenging criminal convictions that makes five courts of appeals to have now ruled that Article 36 does not give rise to privately enforceable rights. Weighed against that is a single circuit, the Seventh Circuit, and I think in the face of this overwhelming imbalance in the case law, it's very difficult to conclude that the language of that provision could be viewed as clear. Has the issue ever presented itself in the Supreme Court? A cert petition was filed in the Mora case, and the Supreme Court did not grant that cert petition. Is there any discussion about the issue itself? No, it was without recorded dissent. Second, I want to just turn to the text of the Convention, and in doing so, I want to remember, remind the Court about some of the background principles that we look to when we view that text. First, we understand that in looking at a treaty, the usual practice is that a treaty is not enforceable by individuals. Rather, it is enforceable by states in state-to-state diplomacies, or in the case of the Vienna Convention itself, through the optional dispute resolution mechanism set out by the optional protocol. Second, I think when we construe the treaty, we need to remember that the Court must give great weight to the views of the State Department, as I indicated. And certainly, the State Department takes compliance with the Vienna Convention very seriously here. It is a source of protection, both for foreign nationals in this country, and especially for U.S. nationals who travel or work abroad. This is a self-executing treaty, is it not? It is, Your Honor, and it does create binding obligations of its own force, not only on federal officials, but also on state and local officials. But read in context, we think the text of the treaty simply does not support a construction that it gives rise to enforceable private rights. And I just want to be clear, even under the Gonzaga framework, and obviously I think there are significant differences between the framework of construing a federal statute to be individually enforceable and construing a treaty to be enforceable, but even under Gonzaga, what is required is what the Supreme Court there describes as an individually enforceable private right. There are places in Gonzaga where the Court uses shorthand to reference it as an individual right or a private right, but I think there are places in the opinion as well where the Court is quite clear that what it means is not simply a right that benefits individuals, but instead a right that is judicially enforceable in a domestic court by an individual. Well, let me read a phrase from Gonzaga and see what your take is on it. For a statute to create private rights, its text must be phrased in terms of the persons benefited. You're probably familiar with the phrase. I am, Your Honor. But isn't that what the Vienna Convention is precisely doing? It is couched in terms of the persons benefited, which means nationals who have been detained and are in custody. Well, if I could answer that in two ways, Your Honor. First, Judge Fuentes, I think later in Gonzaga, and the specific page is 289 to 290, the Court relies on the fact that the statute there creates an enforcement mechanism as giving weight to its conclusion that there is not a congressional intent to, quote, create individually enforceable private rights. So I think what the Court is looking for in Gonzaga goes beyond merely an indication of benefiting an individual or creating rights in the air for an individual. I think the Court really is looking for enforceable individual rights, and that's critical, Your Honor. But I think as well – But why isn't it enforceable? In Gonzaga, it's not held to be enforceable. Why isn't it enforceable in McPherson? Here, Your Honor, I would say we have to look at what that language in Article 36 was intended to do. As Your Honor may be aware, this is the first significant multilateral treaty, treaty among a large number of nations governing consular relations. Before the Vienna Convention, countries carried out consular relations typically under bilateral state-to-state treaties, which provided for mandatory notification of the detention of a foreign national. And the initial draft of this convention similarly provided for mandatory notification. Ultimately, there were significant number of objections to that plan because of concerns about the burdens that it would impose on states where large numbers of tourists or immigrants traveled, and a compromise – Weren't some of the objections, including from the U.S. and the United Kingdom, based on the fact that the convention did not contain the very language that we're talking about now, Section 36B, which specifically requires informing an individual that he has a right to consult with consular officials? Well, the initial counterproposal, Your Honor, was simply to provide notification when a detained foreign national asked for it. And there was a concern raised, and I think a legitimate one, that most foreign nationals would have no idea to ask. And that was the genesis for the current language of the convention. But I think when we see that this is a modification of virtually identical language, and actually the specific language is quoted in Judge Nelson's dissent in the Cornejo decision, it is virtually identical to the mandatory notification language with the addition of this provision to tell the foreign national about the right to have his consular notification done. I think we can more properly construe that text as a limitation on and a restriction on the obligations of countries, states, under the conventions, and not as an intent to give rise to an enforceable private right. I think that certainly is a construction that is more consistent with the history of the convention. As we know, when the President submitted the convention to the Senate, he did so with an insisting law and practice. And I think the idea that a convention would have given rise to a judicially enforceable right in foreign nationals would have been viewed as a fairly significant departure from law and practice. There's a very good rationale for this provision in the Vienna conventions. The obvious, of course, is that a foreign national finds him or herself in a jail or in detention in the United States and has no idea what the legal system is like. And it would be a great help if that person can consult with consular officials who can help them maybe get a lawyer and things like that. And similarly, an American finding him or herself in a jail in Russia might benefit by that country telling the American that, you know, you can speak to consular officials and maybe they can help you out. But what good are those rights which seem to have great rationale if there's no enforcement mechanism, if there's no way to say you should have done it and you didn't and maybe you should pay a penalty? Well, Your Honor, if I may, we do take those rights very seriously. They are a significant protection. And for that reason, the State Department has engaged in extensive efforts to ensure compliance in part by outreach to district judges across the country, to prosecutors across the country, to law enforcement officials, all of whom have been given training and a very large number of law enforcement agencies have now incorporated those protections within their arrest or booking protocols. And district attorneys have been encouraged to seek compliance as well. Obviously, at any time at which notification is at which someone in the process becomes aware that notification has not been made, that can be immediately remedied, and it is. And we have a whole branch of the State Department in office there whose sole job is to encourage compliance. But I think we're in a situation where we're not talking about compliance anymore and the benefits of the Vienna Convention at this point, frankly, are not available to Mr. McPherson. Those are benefits that are intended to help a foreign national as he works through, or an American national abroad, as they work through an unfamiliar criminal justice system. That is complete. And the point for this Court to decide is whether now a claim for money damages, and might I add that as a type of remedy that with perhaps one possible exception, no other state party to the convention has recognized as a valid remedy, whether that is an effective and appropriate means of implementing the treaty. And with all due respect, Your Honor, I think it is not, and I think there's not support for that in the text or the history of the convention. What would be the measure of damages for the violation of the right of notification? I mean, I think it would be very difficult, Judge Van Aske. You know, Mr. McPherson's complaint essentially asks a court to evaluate the vigor of a foreign government's consular services, the possibility that they would have provided assistance in his criminal proceedings. It would be a very odd and potentially embarrassing inquiry from the part of our State Department. Well, that's a burden. He says I'm willing to take the burden. Give me a chance to go to court and I'll prove my damages. It's the way that all constitutional violations are presented before a jury under 1983. I'll show you what the harm is that resulted from your violating my constitutional rights. It's a burden of proof. But, Your Honor, of course we undertake that inquiry only if the framers who put together the And when we know that the convention did in fact create an enforcement mechanism beyond diplomacy, but yet that enforcement mechanism set out in the optional protocol was a very carefully circumscribed one, one that could not be invoked even by consular officials who are accorded what are described as rights in Article 36, but only by the governments themselves, could be invoked only before the ICJ, an international tribunal, provided for a judgment which would have effect only in respect to the parties and the particular facts before it would have no binding or precedential effect, and for which even that ICJ judgment, as the court now knows following Medellin, has only limited means of enforcement as against in our country and in our system, state and local governments. I think it's just inconsistent with that context to think that at the same time our government understood itself to be creating privately enforceable rights so that someone could bring a 1983 action of this type. I have nothing further. If the court has no further questions, we would simply ask the court to affirm. Thank you. Thank you. Thank you. Your Honors, there are two points I'd like to make. First, I'd like to read from the Gonzaga opinion itself. Gonzaga tells us that plaintiffs suing under Section 1983 do not have the burden of showing an intent to create a private remedy because 1983 generally supplies a remedy for the vindication of rights secured by Federal law. Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by Section 1983. That's the key distinction in Gonzaga. It's a two-part inquiry. The second part is already handled, and that's where the Ninth, the Second, the Eleventh, and the Department of Justice brief gets the inquiry wrong. And does the Vienna Convention intend to create an individual right? It does, Your Honor, because both the text is phrased in terms of the people benefited, and it's confirmed on a distinct class of beneficiaries, detained foreign nationals. This isn't a right given to the public at large, but instead it's a distinct group of individuals. And those are the two main factors the Gonzaga court gives us to determine under the analytical framework of that case. Why, as a policy matter, is this a good idea? As you mentioned, Your Honor, earlier, that I believe it's important to secure the rights of those foreign nationals here as a cultural bridge, as a lost opportunity to have a free and fair defense, but more importantly, that we take the right seriously in the United States, and so that other countries will also take the right seriously. I can read from the State Department's manual itself. Maybe you could calm my fears. Everyone who is from a different country, who is in an American jail right now, who hasn't been told about the ability to consult with consular officials is going to have a 1983 civil action. They're going to have the right to plead a 1983 suit, Your Honor, but they still have to prove the elements of that suit. They still have to prove they're entitled to damages, but they still deserve the opportunity to plead that right, because it's a right that's given to them under the Vienna Convention. The Gonzaga test affirms that. The non-textual sources support that. And so they deserve the opportunity to plead that and to carry it through to fruition and perhaps be entitled to rights, because 1983 was both intended to compensate victims for the violation of federal rights, but also to police abuse of state power. And for those reasons, we ask that you respectfully reverse the decision of the District Court and remand for further proceedings. Thank you very much. Thank you, Mr. O'Neill. And Ms. Swiggle, thank you very much. It's a difficult case, a very novel issue here that we have to work with, at least for the Third Circuit. Thank you very much. We'll take the case under advisement. Our next case will be with Judge Weiss from Western Pennsylvania, coming in via video. We need a few minutes to set that up, so we'll take a five-minute recess. Thank you, Judge. We'll take five minutes to set that up, so we'll take a five-minute recess.